UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALBERT J. HYNES | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 22-2001 |
| | * | |
| LAKEFRONT MANAGEMENT | * | |
| AUTHORITY, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| *********************************** | * | |

ORDER AND REASONS

Before the Court is the Motion to Strike Pursuant to Louisiana Code of Civil Procedure Art. 971 or, in the Alternative, Motion to Dismiss Pursuant to Rule 12(b)(6) filed by defendants the Lakefront Management Authority ("LMA") and Bruce L.A. Martin (with the LMA, the "LMA Defendants"). The court finds that the LMA Defendants are "persons" entitled to file a special motion to strike under Article 971 and that a conditional privilege governs the statements at issue here. Moreover, Hynes has failed to present any evidence to create a genuine issue of fact as to whether the LMA Defendants abused that privilege. Therefore, he has not established a probability of success on his defamation claims against the LMA Defendants, and these claims must be dismissed. Further, the court finds that because Hynes has not plead that the LMA Defendants employed Hynes, any employment discrimination claims against them are hereby dismissed. Accordingly, the Motion is GRANTED and Hynes' claims against the LMA Defendants are dismissed with prejudice.

Background

Plaintiff Albert J. Hynes seeks damages for his allegedly wrongful termination from employment as a civil service Southeast Flood Protection Orleans Levee District police officer on or about March 10, 2021. Hynes began his employment in March 2019 and was assigned the

1

LMA's New Orleans Lakefront Airport as the Orleans Levee District Police ("OLDP") security officer and as liaison officer between OLDP and management at the Lakefront Airport. In this lawsuit, Hynes has named as defendants the LMA, Airport Director Martin, the Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East ("FPA"), and unidentified insurance companies.[1] Hynes has asserted claims against the defendants for racial, gender, and age discrimination in violation of state and federal law. He has asserted that he is a whistleblower. He alleges that the complaints against him were false and libelous.

Hynes filed this action in state court on May 16, 2022. Defendants removed to this court on June 30, 2022. The parties consented to proceed before the undersigned magistrate judge.

Presently before the court is the LMA Defendants' Motion to Strike Pursuant to Louisiana Code of Civil Procedure Art. 971 or, in the Alternative, Motion to Dismiss Pursuant to Rule 12(b)(6). Of relevance to this motion, Hynes alleges in his verified Complaint that the investigation that resulted in his termination followed an August 10, 2020, written complaint by Martin to the LMA Board Chair. Martin alleged various concerns about Hynes, including that he was biased, harassing, and neglectful towards Flightline First's general manager in favor of Signature Aviation's general manager; that he failed to take a driver's test for operating a vehicle on the airport's non-public taxiways and runways; that he did not work evening hours; that he left his vehicle's rear door open while there may have been an AR-15 in the trunk; that he harassed two minority males who were at the airport for an interview; that he failed to conduct patrols unless he thought it would get him a headline; and that he was a liability to the LMA while at the airport and was a waste of the airport's money.

---

[1] Hynes also named Captain Donald P. Juneau of the FPA, who conducted the investigation into Hynes' alleged violations of FPA policies. The court granted Juneau's motion to dismiss, and he is no longer a defendant. (Rec. Doc. 21).

In his complaint, Hynes alleges generically that upon information and belief, defendants' written accusations[2] are false and libelous. He also alleges with more specificity that the incident involving the two males who were at the airport for an interview did not involve ethnicity. He explains that both men were white and Hynes had been alerted by the manager of Signature Aviation that the two men had been observed driving around the airport parking lot twice and then parking again. As to the assertion that there may have been an AR-15 in his SUV trunk while the rear door was open, Hynes alleges that the individual complaining about this incident did not base her assertions on what she actually saw in the rear of his SUV. Instead, he says the photos do not show a weapon and her text merely stated, "Hope there are no guns in his vehicle." He alleges this statement was based on information from the complainant's police friends that they stored their weapons in the trunk.

According to the Affidavit of Louis Capo, Executive Director of the LMA, the airport received a verbal and written complaint regarding the incident with the two males through the Airport's Manager, Chris Henderson in late April and early May 2020. Henderson relayed the conversation he had with Randy Zimmerman and forwarded the written complaints of Zimmerman and the other male—Randy Solice—to Capo, Martin, and Wilma Heaton who was the LMA Board Chair at the time. It appears these complaints provide the basis for Martin's statements about the incident in his August 2020 letter.

After the LMA's receipt of Martin's letter, the LMA forwarded it to the FPA. The August 2020 letter is attached as an exhibit to Capo's affidavit. Additionally, Capo has attached the email correspondence from Henderson regarding Zimmerman's phone call, forwarding Zimmerman's written complaint, and forwarding Solice's written complaint. These complaints indicate that

---

[2] Although not recounted here, Hynes also appears to challenge the written notification of the investigation into his alleged policy violations in December 2020 and the February 2021 written notice of policy violations sustained.

Zimmerman and Solice felt that Hynes was rude to them, made threatening comments, and improperly detained them for more than 30 minutes.

Hynes has submitted the affidavit of Kerry Najiola, who was Superintendent of Police East Jefferson, Lake Borgne, and OLDP during the time period Hynes worked as an FPA police officer at the Lakefront Airport. Najiola attaches a document that reflects the information obtained by Hynes during the vehicle stop of Zimmerman and Solice, which was passed on to the DEA and customs during Hynes' investigation. The document states:

> OK fellas. Randy Glen Zimmerman w/m d.o.b 03-10-1981. From Ohio. Driving a Toyota Corrola Mississippi License Plate KAB0432. Randall William Solice, w/m d.o.b 03-03-1963, from Shreveport La. Mr. Solace stated that he was interviewing for a job at Flight Line First. No information on the aircraft. But we believe that the aircraft did not communicate with the F.A.A. tower. What do you think?

(Rec. Doc. 20-2).

Hynes also includes a statement of facts with his opposition to the present motion, but this statement is not certified or attested to by Hynes. Many of the allegations therein are similar to those alleged in his Complaint. He includes additional details about the incident with Zimmerman and Solice, asserting that there had been a series of auto burglaries and thefts in the area and that the airport was closed to the general public due to the COVID-19 pandemic at the time. He points out that Zimmerman and Solice do not identify themselves as minorities in their email complaints.

The LMA Defendants argue that Hynes' complaint against them must be dismissed under Louisiana's Code of Civil Procedure Article 971, which provides a procedure for early dismissal of meritless claims arising from a person's exercise of the right to free speech under the Louisiana or United States Constitution in connection with a public issue.  They add that it appears that Hynes' only claim against them is the defamation claim because although he alleges generally that "defendants" are liable for gender, race, and age discrimination, disparate treatment, and creation

4

of a hostile work environment, Hynes was not employed by the LMA or Martin. Therefore, they argue, no employment discrimination claim can be stated against them.

Hynes opposes. He argues that Article 971 does not apply to the LMA because it is not a natural person with a freedom of speech right. He further argues that Martin's letter was not written in connection with a public issue because it did not concern an existing investigation. Even if Article 971 applies, he argues that his defamation claim should survive because Martin's letter was written with malice or gross negligence and because the LMA failed to investigate further before forwarding it to the FPA.

Law and Analysis

1. *Louisiana's Anti-SLAPP Statute[3]*

Louisiana Code of Civil Procedure article 971 provides that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim

La. Code Civ. Proc. art. 971 (A)(1). The filing of a special motion to strike results in a stay of all discovery. Id.  art. 971(D). And the prevailing party on such a motion is awarded its reasonable attorneys' fees and costs. Id.  art. 971(B).

Article 971 further provides that an act "in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes the following:

---

[3] "Anti-SLAPP is an acronym for anti-Strategic Lawsuit Against Public Participation." Terrell v. Derouen, 2021-1327 (La. App. 1 Cir. 7/5/22), 345 So. 3d 1065 n. 1. Louisiana Code of Civil Procedure article 971 is known as an anti-SLAPP statute that applies "when a litigant has brought a cause of action, typically alleging defamation, in an effort to chill the First Amendment speech of its target." Id.

5

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Id. art. 971(F).

Article 971 has been described as establishing "a burden-shifting analysis for weeding out frivolous claims." Henry v. Lake Charles Am. Press, L.L.C., 566 F.3d 164, 170 (5th Cir. 2009). The defendant must make a *prima facie* showing that the "cause of action against him arises from an act by him in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." Id. (quoting Starr v. Boudreaux, 2007-0652 (La. App. 1 Cir. 12/21/07), 978 So. 2d 384, 388–89). The burden then shifts to the plaintiff to demonstrate a probability of success on his claim. Id.

Importantly, though, the United States Court of Appeals for the Fifth Circuit has made clear that "probability of success" does not mean the court can make summary assessments of credibility or resolve disputed issues of material fact.[4] Lozovyy v. Kurtz, 813 F.3d 576, 586 (5th Cir. 2015). Instead, "a non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56." Block v. Tanenhaus, 815 F.3d 218, 221 (5th Cir. 2016). To defeat the motion, the plaintiff "must demonstrate that there is a

---

[4] The Fifth Circuit made an Erie guess as to how the Louisiana Supreme Court would interpret Article 971. Lozovyy v. Kurtz, 813 F.3d 576, 580 (5th Cir. 2015). As there has been no intervening pronouncement by the Louisiana Supreme Court, the Lozovyy interpretation remains binding on this court. See Dickie Brennan & Co., L.L.C. v. Zurich Am. Ins. Co., No. 21-30776, 2022 WL 3031308, at *2 n. 1 (5th Cir. Aug. 1, 2022).

genuine issue of material fact as to falsity, fault, and defamatory meaning." Block v. Tanenhaus, 867 F.3d 585, 590 (5th Cir. 2017).

> a. *Is the LMA a "person" entitled to the protections of Article 971?*

There appears to be a circuit split on the issue of whether a corporate entity is a person for purposes of Article 971. According to the Louisiana Court of Appeals for the First Circuit, the state and state officials sued in their official capacity are not "persons" under article 971 because, although they are "juridical persons," they do not have a constitutional right to freedom of speech. Lacerte v. State, 2019-1401 (La. App. 1 Cir. 1/4/21), 317 So. 3d 763, 770, writ denied, 2021-00193 (La. 3/23/21), 313 So. 3d 272. In coming to this conclusion, the court cited a Louisiana Supreme Court opinion holding that municipalities are not within the scope of protection of the equal protection clauses of the United States and Louisiana Constitutions and another Louisiana Supreme Court case holding that political subdivisions of the state have no due process rights, no constitutional right to property, and no constitutional right of access to the courts. Id.  (citing Louisiana Assessors' Ret. Fund v. City of New Orleans, 2002-1435 (La. 2/7/03), 849 So. 2d 1227, 1229); Wooley v. State Farm Fire & Cas. Ins. Co., 2004-882 (La. 1/19/05), 893 So. 2d 746, 768). The court cited no precedent holding that a political subdivision does not have a free speech right.

In contrast, the Louisiana Court of Appeals for the Third Circuit has held that juridical persons, such as the Department of Public Safety and Corrections, Office of State Police ("State Police"), are entitled to invoke Article 971.  Braxton v. Louisiana State Troopers Ass'n, 2021-355 (La. App. 3 Cir. 1/5/22), 333 So. 3d 516, 525-26, writ denied, 2022-00201 (La. 4/20/22), 336 So. 3d 467. The Third Circuit reasoned that the Louisiana Civil Code establishes both natural and juridical persons and that the Louisiana Code of Civil Procedure also defines a "person" as including a corporation. Id. (citing La. Civ. Code art. 24; La. Code Civ. Proc. Art. 5251(12)). The

7

court observed that several Louisiana courts have held that municipalities, corporations, and governmental entities are persons under Article 971. Id. Indeed, the Louisiana Second Circuit Court of Appeal and the Louisiana Fourth Circuit of Appeal have done so. See Thomas v. City of Monroe Louisiana, 36,526 (La. App. 2 Cir. 12/18/02), 833 So. 2d 1282, 1287 (holding that a television station was a "person" protected by article 971 because corporations are included in the definition of person under the Louisiana Code of Civil procedure); Williams v. New Orleans Ernest N. Morial Convention Ctr., 2011-1412 (La. App. 4 Cir. 5/11/12), 92 So. 3d 572, 576 (holding that a convention center was a "person" entitled to invoke Article 971 because as a political subdivision of the state, it was a juridical person under the Civil Code). The Third Circuit in Braxton went on to observe that the United States Supreme Court has held that corporations are entitled to First Amendment freedom of speech protection. 333 So. 3d at 526 (citing Citizens United v. Fed. Election Comm'n, 558 U.S. 310  (2010)). Further, the Braxton court found that by defining the type of speech protected, Article 971 focuses on protecting certain "types of speech rather than a particular class of 'persons.'" Id.  (quoting Lacerte v. State, 317 So. 3d at 781 (Whipple, C.J., concurring in part)). Finally, the court reasoned that the legislature was aware that juridical persons are the subject of defamation actions, yet in enacting article 971, the legislature did not exclude juridical persons from the statute's benefits. Id.  at 527. Thus the Braxton court held that the State Police was able to file a special motion to strike under article 971. Id.

The court finds the reasoning of the Louisiana Second, Third, and Fourth Circuits, especially the Third Circuit's opinion in Braxton, more persuasive. The court therefore adopts the Braxton reasoning and finds that the LMA, as a political subdivision of the state and a person under the Louisiana Civil Code and the Louisiana Code of Civil Procedure, is entitled to the protections of Article 971, if it can otherwise meet the Article's requirements.

The court turns next to whether Article 971 is applicable here.

   b.  *Was the August 2020 letter an act in furtherance of the LMA Defendants' right of*
       *free speech under the United States or Louisiana Constitution in connection with*
       *a public issue?*

The LMA Defendants argue that Martin's August 2020 letter falls under subsection (b) and (d) of Article 971(F)(1). They argue that Martin's letter to the LMA constitutes a writing before an official body because the LMA is a political subdivision of the state. They further argue that the letter was written in connection with a public issue or an issue of public interest because it concerns the actions of a police officer assigned to the Lakefront Airport. They submit that the conduct of police officers is a matter of public interest.

Hynes argues that subsection (b), which lists a writing "made in connection with an issue under consideration or review" by an executive or official body cannot apply here because there was no pending investigation into Hynes at the time Martin drafted the letter.

As defendants here point out, "[t]he conduct of police officers in general is a matter of public interest." Davis v. Benton, 2003-0851 (La. App. 1 Cir. 2/23/04), 874 So. 2d 185, 190. In Davis, the court considered a letter of complaint sent by the defendant to the Baton Rouge City Police Department alleging that the plaintiff police officer had harassed the defendant's tenant. Id. The court held that the letter constituted free speech in connection with a public issue under article 971. Id. In finding a public issue, the court explained that "citizens have the right to question the conduct of police officers without fear of reprisals from those whose conduct is questioned." Id. Although Davis involved a private citizen's complaints and did not concern an employment related exercise of speech, the court finds that its identification of issues concerning police as public issues provides guidance here.

Indeed, another court has found that "[t]he provision of fire protection services is a matter of public concern. By extension, the employment decisions of an entity providing such services also are a matter of public concern." Muller v. Fort Pike Volunteer Fire Department, 2019-0156 (La. App. 4 Cir. 6/26/19), 275 So. 3d 927, 937. In Muller, the plaintiff had raised a number of concerns at a volunteer fire department's monthly membership meeting regarding his opinion that meetings should be subject to the open meetings law, that recruitment efforts were insufficient, and that the board was not working well with firemen. Id. at 930-31. One of the defendants—the secretary of the department—later brought to the members' attention that the plaintiff had a conviction for impersonating a police officer. Id. at 931. The plaintiff was then expelled from the department. Id. Plaintiff sued the fire department, the president, and the secretary for defamation. Id. at 929-30. The defendants filed a special motion to strike, and the court held that "the [defendant's] statement bringing [plaintiff's] conviction to the attention of the Department's members was a statement made in connection with a matter of public concern" under Article 971. Id. at 937.

Similarly, the court in Braxton considered a defamation claim by a member of the governing board of the Louisiana State Police Commission against the State Police and one of its officers. 333 So. 3d at 520. The officer had filed an incident report with the DPSC alleging that the plaintiff commissioner had improperly attempted to punish a trooper for arresting the plaintiff's daughter for driving while intoxicated. The officer then filed a second incident report requesting a personal threat assessment regarding the capabilities of the plaintiff to potentially harm him or his family after the officer observed a suspicious vehicle near his home. Id. at 520-21. The defendants filed a special motion to strike with regard to the second incident report, and the court held that it

10

was a writing in connection with an investigation before an official body—the DPSC—in satisfaction of Article 971(F)(1)(a). 333 So. 3d at 525-26.

The court acknowledges, however, that personal employment disputes have been held to be outside the purview of Article 971. For example, in Z Bayou, L.L.C. v. WAFB, L.L.C., the court held that newspaper's publication of a story regarding a movie production company's failure to pay crew members was not a matter of public interest entitled to the protections of article 971. No. CV 15-4384, 2016 WL 5940867, at *2 (E.D. La. Oct. 13, 2016). And in Lyons v. Knight, the court held that when a company that had retained plaintiff to perform interior design work made complaints to law enforcement regarding the plaintiff's alleged forgery of checks for the purposes of initiating a criminal prosecution, there was no article 971 public issue entitling defendant to file a motion to strike. 2010-1470 (La. App. 3 Cir. 5/11/11), 65 So. 3d 257, 258-59, 266. The court concluded: "This case is not about any issue of public concern. It involves a person with whom a private corporation and private citizens had a business relationship allegedly failing to perform work or provide services in exchange for the money she received." Id. at 265.

Indeed, in determining whether speech was "in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue," courts have analyzed to precedent analyzing whether a public employee had spoken out on a matter of "public concern" for purposes of stating a free speech retaliation claim.[5] In retaliation cases, courts have found that associating with political organizations, campaigning for a political

---

[5] For example, in laying out the standard for showing that a person was exercising her right of free speech regarding a public issue under Article 971, the Louisiana Second Circuit Court of Appeals quoted the United States Supreme Court in Connick v. Myers and held that "[s]peech on matters of public concern has been described as speech 'relating to any matter of political, social, or other concern to the community.'" Quinlan v. Sugar-Gold, 51,191 (La. App. 2 Cir. 4/5/17), 219 So. 3d 1173, 1183 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983); Schittone v. Stoma, 2017-1732 (La. App. 1 Cir. 5/2/18), 2018 WL 2078822 (same); Kirksey v. New Orleans Jazz & Heritage Found., Inc., 2012-1351 (La. App. 4 Cir. 2/27/13), 116 So. 3d 664, 669, writ denied, 2013-0686 (La. 5/3/13), 113 So. 3d 216 (same).

candidate, speech made against the backdrop of ongoing commentary and debate, and speech relating to racial discrimination is speech that touches upon a public concern. Herrera v. Med. Ctr. Hosp., 241 F. Supp. 2d 601, 609 (E.D. La. 2002) (collecting cases). But courts have found that speech concerning a purely personal labor dispute and challenges made by an individual to one's work conditions and the quality of the work environment are private speech. Id.; see McGowan v. Hous. Auth. of New Orleans, 2012-1418 (La. App. 4 Cir. 3/27/13), 113 So. 3d 1143, 1156 ("The jurisprudence is well-settled that speech regarding the topic of employment disputes— employment grievances, personnel disputes, and working conditions—generally does not involve a matter of public concern.").

During the relevant period, Hynes was a police officer assigned to work at the Lakefront Airport and Martin was the Airport Director. The Airport is managed and controlled by the LMA. See Oct. 1, 2018, Memo. of Understanding, Rec. Doc. 19-3, at 11. The LMA is a political subdivision of the state of Louisiana that is overseen by a board of appointed, volunteer commissioners. See Aff. of Capo, Rec. Doc. 19-3, at 1.

Martin's August 2020 letter to the Chair of the LMA states that it is in response to a question by the Chair as to a potential conflict of personalities with Hynes. Martin denied any conflict of personalities and insisted that the issue was the "liability that having [Hynes] here as an officer has brought to our front door." Aug. 20, 2021, Letter, Rec. Doc. 19-3, at 27. He expresses his concern with running the airport "to put the best product out to the public who's taxes pay my salary." Id. He complains about Hynes' alleged failure to be unbiased in the treatment of airport tenants. Id. He complains about Hynes' effectiveness in deterring crime at the airport, asserting that Hynes could not respond quickly to issues occurring on the airfield because he had not taken the proper driving tests to do so, that he did not wear a uniform and drove an unmarked vehicle,

that he did not work at night when the airport's problems with vehicle break ins and thefts happen, and that he spent all of his days sitting in his office. Id. at 27-28. He describes the alleged harassment of Zimmerman and Solice, noting that they were minorities and asserting that Hynes is "known around the airport for signaling them out with no just case to back it up." Id. at 28. He alleges his "understanding" that Hynes has told staff that he has an AR-15 in his vehicle and that Martin has been notified that the trunk of Hynes' vehicle was left wide open. Id. Martin admitted in the letter that he did not know if there was an AR-15 in the vehicle at the time. Id.

Because the LMA is a public body that manages a public airport and Martin's letter expresses concerns about Hynes' performance as a police officer at that airport, the court finds that the letter was written in furtherance of his free speech rights in connection with a public issue. Although in some sense, Martin's concern appears to have been with his own job responsibilities in properly running the airport, the court nonetheless finds that the public nature of the LMA and the airport and the general observation that police conduct is a matter of public concern is sufficient to categorize Martin's letter as an exercise of his free speech rights on a public issue.

Thus, article 971 applies and the Court now turns to whether Hynes can establish a probability of success.

### c. Defamation

"Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Costello v. Hardy, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139 (quoting Trentecosta v. Beck, 96-2388 (La. 10/21/97), 703 So. 2d 552, 559). "[D]efamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory

meaning." Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 674–75. Words are defamatory per se if they expressly or implicitly accuse one of criminal conduct or if they tend to injure one's personal or professional reputation without considering extrinsic facts or circumstances. Id.  When a plaintiff proves the words are defamatory per se, the elements of falsity, fault, and injury are presumed, but may be rebutted by the defendant. Id.  Statements of opinion that do "not expressly state or imply the existence of underlying facts" cannot generally support a defamation claim, however, because "a purely subjective statement can be neither true nor false." Fitzgerald v. Tucker, 98-2313 (La. 6/29/99), 737 So. 2d 706, 716–17 (quoting Bussie v. Lowenthal, 535 So. 2d 378, 381 (La. 1988)). If the expression of opinion implies the existence of "underlying facts ascertainable by a reasonable person with some degree of certainty," the opinion can only support a claim for defamation if it was made with actual malice. Id.  at 717.

Additionally, "[o]ne who makes an otherwise defamatory statement, enjoys a conditional privilege upon establishing that he made that statement in good faith, on a matter in which he had an interest or a duty, and to another person with a corresponding interest or duty." Davis v. Benton, 2003-0851 (La. App. 1 Cir. 2/23/04), 874 So. 2d 185, 190; see Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So. 2d 730, 743. The Louisiana Supreme Court requires a two-step process for determining whether a conditional privilege exists. Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 682. First, the court must determine "whether the attending circumstances of a communication occasion a qualified privilege." Id.  If so, the court must then determine "whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be examined." Id.  To defeat a conditional privilege, the plaintiff must show the defendant's "knowledge or reckless disregard as to falsity." Id.  at 684. The Louisiana Supreme Court has observed that "only those false statements made

with a high degree of awareness of their probable falsity meet the reckless disregard standard." <u>Id.</u> at 688. The standard requires more than gross negligence—"[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." <u>Id.</u> (quoting <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968)). "[E]ven a failure to investigate, is not sufficient to prove abuse of the conditional privilege." <u>Schmidt v. Cal-Dive Int'l, Inc.</u>, 240 F. Supp. 3d 532, 549 (W.D. La. 2017).

For example, the conditional privilege extends "to the communication of alleged wrongful acts to the officials authorized to protect the public from such acts." <u>Kennedy</u>, 935 So. 2d at 683. Thus, in <u>Kennedy</u>, the Louisiana Supreme Court held that where a fast food employee reported the use of counterfeit money by a customer to the police, a conditional privilege applied. <u>Id.</u> The court found there was no allegation and no evidence to support finding that the employees knew their statements were false. <u>Id.</u> at 687-88. The court reversed the court of appeal and held that the employees' purported failure to take reasonable measures to verify the authenticity of the bill before reporting their suspicions to the police did not create a question for the jury on whether a statement was published with reckless disregard for the truth. <u>Id.</u> at 689. The court determined that the suspicions of the employees were "clearly not arbitrary" because the bill did not resemble modern currency. <u>Id.</u> The court further held that the employees' failure to receive training in detection of counterfeit currency and failure to investigate further before contacting police was insufficient to establish reckless disregard for the truth. <u>Id.</u> Because the plaintiff had made no factual showing regarding knowing falsity or reckless disregard for the truth by the employees, the Louisiana Supreme Court held that the trial court had properly granted summary judgment dismissing plaintiff's defamation claim. <u>Id.</u>

Courts have also held that "all employees have an interest in their employer's termination policies and grounds for termination," and that the conditional privilege may therefore apply to their statements. <u>Rouly v. Enserch Corp.</u>, 835 F.2d 1127, 1130 (5th Cir. 1988); <u>see Smith</u>, 639 So. 2d at 743 (holding that statements made by members of a committee while conducting a peer review inquiry into two complaints regarding a cardiovascular surgeon satisfied the requirements for conditional privilege). For example, in <u>Rouly</u>, the United States Fifth Circuit Court of Appeals held that the conditional privilege protected statements made by employees of the defendant companies during the course of the investigation into fraud that led to plaintiff's termination. 835 F.2d at 1130. Further, the court found the defamation claims against the defendant companies were properly dismissed because there was no evidence that malice or lack of good faith motivated the statements. <u>Id.</u> The court observed that although the evidence of plaintiff's purported "impropriety may have been thin . . . it existed, and its significance no doubt appeared magnified in light of the more serious wrongdoing of other employees." <u>Id.</u> The court affirmed the dismissal of the plaintiff's defamation claims against the company. <u>Id.</u> at 1131.

Similarly, the district court in <u>Cross v. Shell Oil Co.</u>, held that the conditional privilege applied to a report addressed to the plaintiff that was written by another employee and signed by plaintiff's supervisor and that described plaintiff's job performance as unsatisfactory, stated that plaintiff had projected an attitude of not wanting to be on the job, and stated that immediate and sustained improvement was expected. 711 F. Supp. 302, 305 (M.D. La. 1988). The court further found there was no evidence to establish that the person who wrote the report had reasonable grounds for believing that her statements were not true and there was no evidence of any malice. <u>Id.</u> The court granted summary judgment and dismissed plaintiff's defamation claim. <u>Id.</u> at 306.

Here, the LMA Defendants argue that Hynes cannot establish that the statements in the letter are false because the letter is based on Martin's personal belief that the airport would be better served by having a different police officer assigned to perform security. They then argue that even if Martin's letter contained defamatory statements, a qualified conditional privilege applies. They argue that as Director of the Lakefront Airport, Martin had an interest and a duty to determine whether the assigned officer was acting in the best interest of the airport. They argue that the LMA had a similar duty and interest in the performance of the officer assigned as the Airport Liaison Officer. In providing the letter to the FPA, the LMA argues that it had an interest and duty to ensure that the FPA assigned an officer to the Liaison position that could best perform the job. They insist that Martin had reasonable grounds to believe the information expressed in his letter based on his own observations and complaints made by a third-party to Airport personnel regarding harassment.

Hynes argues that Martin defamed him in asserting that he had harassed two minorities. He submits that this is false.[6] He correctly points out that nothing in the email complaints sent by Zimmerman and Solice indicate that they are minorities or that they are alleging racially motivated harassment. Hynes also submits the affidavit of Najiola, which includes as an exhibit the background information that Hynes obtained about Zimmerman and Solice, identifying them both as white males. Hynes further complains that Martin's statement that Hynes was known for singling out minorities is unsupported.[7]

---

[6] He also argues that this is a defamatory statement because, if true, such discrimination would amount to malfeasance in office. La. Rev. Stat. § 14:134(2). The LMA Defendants do not counter this assertion and so, for the purposes of this motion, the court assumes such a statement would be defamatory.

[7] The court notes that Hynes' argument in opposition does not address any of the other assertions made by Martin in his letter as a basis for a defamation claim. Accordingly, the court finds no other claims of defamation stated in Hynes' Complaint.

Hynes does not explicitly address Martin's conditional privilege argument. However, he does argue that Martin's action in sending the letter to the LMA board went beyond ordinary negligence because he waited for months after the incident with Zimmerman and Solice to "spin" the story into one involving discrimination against minorities when there is no evidence any minority was involved. Further, he argues that Martin added the assertion that Hynes had a pattern and practice of harassing minorities for the purpose of triggering an investigation that would lead to Hynes' termination. He further argues that the LMA Board Chair acted with malice or gross negligence by forwarding the letter to the FPA without investigating first.

The allegedly defamatory statements at issue here are as follows:

> Al harassed the gentlemen that were interviewing. He told them they had no business being here on the airport. He then began threatening to arrest the gentlemen instead of verifying the story with the owner of the construction company who was inside of Flightline First. . . . There was no reason for this harassment and it put a stain on the airports reputation with the gentlemen who were there for the interview. *The fact that these gentlemen were also minorities does not help as Officer Hynes is known around the airport for singling them out with no just case to back it up.*

(Rec. Doc. 19-3, at 28) (emphasis added).

The LMA Defendants do not address Hynes' argument that the italicized statement is false and that it amounts to defamation per se. They argue generally that the statements in the letter are based on Martin's personal beliefs—in other words, that they are subjective opinions that cannot be proven true or false. That may well be the case for the vast majority of the letter. However the italicized statement is factual in nature. Were the men that Hynes allegedly harassed minorities? Is Hynes known for singling out minorities? The court finds that the italicized statement could support a claim for defamation.

The court next finds that a conditional privilege applies to all the statements in the letter. Martin's letter to the LMA Board Chair regarding Hynes' job performance is similar to a statement

by an employee reporting alleged wrongdoing. As Airport Director, Martin was responsible for running the airport. He provided his opinions regarding Hynes' job performance at the airport in the context of reporting that he believed the LMA was wasting its money paying for Hynes to provide security services. He was fulfilling a duty in making the report and he made the report to an entity bound by the same duty. Similarly, in forwarding the letter to the FPA, the LMA was sharing concerns regarding Hynes' performance with the entity obligated to provide the security officer for the airport. The court finds a conditional privilege extends to Martin's letter and to the LMA forwarding that statement to the FPA.

Hynes has not directed the court to any evidence of actual malice on the part of Martin or the LMA as to Martin's assertion that the two men were minorities or that Hynes was known for singling out minorities. Instead, he asks the court to infer that Martin and the LMA acted with knowledge or reckless disregard to the falsity of these statements because the correspondence Martin relied on to recount the incident with Zimmerman and Solice does not indicate they were minorities—yet Martin asserted that they were minorities in the letter; because Martin waited nearly four months after the incident with Zimmerman and Solice to write the letter; and because Martin included an unsupported statement that Hynes was known around the airport for targeting minorities.

The LMA Defendants have offered no explanation or basis for Martin's assertion that Zimmerman and Solice were minorities or that Hynes was known for targeting minorities. They simply argue that the statements in the letter were made in good faith because they reflected Martin's opinion about Hynes' effectiveness as a liaison officer.

Applying a summary judgment standard, the court considers whether there is sufficient evidence for a jury to find that the LMA Defendants abused the conditional privilege and are not

entitled to its protection. First, the court finds that the evidence cannot support finding that Martin's statement that Hynes was known around the airport for singling out minorities was made with knowledge or reckless disregard for falsity. Hynes' own Complaint alleges that rumors were circulating around the airport regarding his reputation as a racist. He alleges that former airport director Powell was behind these rumors.[8] While Hynes challenges the rumors as false, this does not mean that Martin acted with knowledge or reckless disregard as to the falsity of the rumors. Instead Martin's letter simply reports that Hynes was "known around the airport" for singling out minorities—a statement that is reasonably based on the statements that Hynes himself recounts. There is simply no evidence to support finding that Martin had a high degree of awareness that his statement about what was "known around the airport" was false (if it is false at all). Moreover, like the employees in Kennedy and Rouly, Martin had some basis to believe this statement about the opinions of others at the airport. 935 So. 2d at 689.  And Hynes has pointed to no evidence that could support finding that Martin acted with reckless disregard for falsity in referencing these rumors in his letter. This statement remains protected by a conditional privilege and cannot support a claim for defamation.

The court next considers Martin's assertion that Hynes had harassed two minorities who were at the airport for an interview. The email complaints by Solice and Zimmerman and Henderson's email summarizing the verbal complaint provide a reasonable basis for Martin's statements regarding the alleged harassment. But as Hynes points out, none of these communications describe Solice or Zimmerman as minorities. Hynes has produced  the DEA and

---

[8] He alleges, for example, that the allegation that Hynes was racially biased was based on "Powell's mistaken belief petitioner shot an African-American when he was a New Orleans Police Officer. Mr. Powell opined petitioner bypassed him while he was airport manager because he was black. Powell mistakenly believed he was petitioner's supervisor and his assignment was to issue badges." (Rec. Doc. 1-1, at 5). In his opposition to the present motion, he adds that "Hynes is informed and believes and on such information and belief alleges defendant Martin believed he was a racist because of Powell's false rumor . . . ." (Rec. Doc. 20, at 10-11).

Customs report indicating that he determined that Solice and Zimmerman were white males. (Rec. Doc. 20-2). Importantly, though, there is no indication that Martin had access to this information. While it is unclear what caused Martin to report that the two men were minorities, there is no basis to find that he knew this to be false.

Moreover, there is no basis to conclude that Martin was aware of the probable falsity of the statement. As the Louisiana Supreme Court explained in Kennedy, the reckless disregard standard requires more than gross negligence. 935 So. at 682. There must be evidence to support finding that the defendant "entertained serious doubts" as to the truth of his statement. Id. (quoting St. Amant, 390 U.S. at 731). And "even a failure to investigate" is not enough. Schmidt, 240 F. Supp. 3d at 549. Hynes points to Martin's delay in writing his letter. But the letter raises numerous concerns that appear to have occurred over many months. There is no malice to be found there. Hynes points to the lack of indication in Zimmerman and Solice's complaints that they were minorities. While that is true, this alone cannot lead to the conclusion that Martin entertained serious doubts as to his assertion that they were minorities. Indeed, it is not as if the letters state that Zimmerman and Solice were white, yet Martin asserted they were minorities. Hynes has failed to point to any evidence that could credibly support finding that Martin acted with reckless disregard for falsity. In Cross, the court granted summary judgment for the defendant where there was no evidence to establish that the defendant had reasonable grounds for believing her statement to be false and no evidence of malice. 711 F. Supp. at 305. Here, too, the court finds no disputed issue of material fact and holds that the LMA Defendants are protected by the conditional privilege with regard to Martin's statement that the two men were minorities.

As to the LMA's forwarding of the letter to the FPA, similarly, there is no basis for the jury to find knowledge or reckless disregard to falsity. As Kennedy makes clear, further

investigation is not required to establish good faith. 935 So. 2d at 689. Martin's letter addressed concerns with Hynes' job performance and his opinion that Hynes was a waste of the airport's money. There is no evidence to suggest that the LMA board acted with knowledge of the falsity of the assertion that Solice and Zimmerman were minorities, nor is there any evidence from which to infer that it acted with a reckless disregard for falsity. As to any defamation claim arising from the LMA forwarding the letter, the court finds such claim must be dismissed.

### 2. *Other Claims*

#### a. *Standard for Rule 12(b)(6) Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

*b. Analysis*

In their motion, the LMA Defendants also assert that Hynes has not alleged any other claims, besides defamation, against them. In opposition, Hynes says merely that his complaint also alleges the LMA Defendants' actions violated state and federal employment discrimination law. In reply, the LMA Defendants argue that Hynes cannot state an employment discrimination claim against them because he has not alleged that either the LMA or Martin were his employer. They add that to the extent Hynes seeks to amend his Complaint, such an amendment would be futile because Hynes has already alleged that he was employed by the FPA.

Hynes has not alleged, explicitly or implicitly, that the LMA Defendants were his employer. Further, although he does not specifically allege that he was employed by the FPA, he does so implicitly by alleging that he was employed as a civil service FPA police officer and that he was assigned to LMA's Lakefront Airport as the OLDP security officer and as liaison between the OLDP and management at the LMA's Lakefront Airport. He alleges he was notified of the investigation into alleged policy violations by the Chief Administrative Officer Derek E. Boese of FPA. He also alleges that Boese notified him of the findings and later of the decision to terminate his employment. He alleges that he settled with the FPA because he feared "if he were reinstated as an employee of defendant Southeast Louisiana Flood Protection," he would suffer continued harassment, embarrassment, and eventually termination.

The allegations in Hynes' complaint provide no basis for finding that the LMA Defendants employed him. He has not argued what additional facts he might allege to support such a finding.[9] Thus, to the extent he seeks to assert employment discrimination claims against the LMA Defendants, those claims are dismissed.

Conclusion

The LMA Defendants' Motion to Strike Pursuant to Louisiana Code of Civil Procedure Art. 971 or, in the Alternative, Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 19) is GRANTED in part and DENIED in part. The LMA Defendants are "persons" entitled to file a special motion to strike and a conditional privilege governs Martin's August 2020 letter. Moreover, Hynes has failed to present any evidence to create a genuine issue of fact as to whether the LMA Defendants abused that privilege. Therefore, he has not established a probability of success on his defamation claims against the LMA Defendants, and these claims must be dismissed.  Further, the court finds that because Hynes has not plead that the LMA Defendants employed Hynes, to the extent he has sought to assert employment discrimination claims against them, those claims are hereby dismissed.

New Orleans, Louisiana, this 8th day of November, 2022.

Janis van Meerveld<br>
United States Magistrate Judge

---

[9] Indeed, it appears that any amendment to name the LMA as Hynes' employer would be futile. The evidence attached to LMA's motion indicates that the LMA transferred management and control of OLDP personnel to the FPA in 2011. And in 2018, the FPA agreed to provide the LMA with a police officer through OLDP. (Rec. Doc. 19-3).